523 So.2d 1037 (1988)
Robert BOYD, Jr.
v.
STATE of Mississippi.
No. 57681.
Supreme Court of Mississippi.
April 27, 1988.
R.L. Wong, Cleveland, for appellant.
*1038 Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and GRIFFIN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Robert Boyd, Jr. was indicted, tried and convicted in the Circuit Court of the Second Judicial District, Bolivar County, Mississippi, for murder less than capital and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. He has appealed to this Court and assigns three (3) errors in the trial below.
The victim, Timothy Green and Georgia Lewis, both seventeen-year-old black people, had been going together for four years, but broke off their relationship sometime prior to May 6, 1986. They lived in Cleveland, Mississippi. Around sunset May 6, Georgia was sitting on the hood of a car and was arguing with appellant Robert Boyd, Jr. Green appeared on the scene and told Georgia to come with him. Appellant ordered Green to leave and told Georgia that he would kill Green if he got the chance. Appellant and his cousin claimed that Green displayed a knife during the incident, which was denied by Georgia.
Around 7:30 p.m. on the same evening, Green went to Georgia's house and asked to borrow a knife "in case [appellant] tries to mess with me going down the street." Georgia gave Green a kitchen knife and advised him "to go home and cool your nerves down." Green replied, "No, I'm just going to wait on your brother, Roosevelt, and I'm going to tell him to tell [appellant] to stay off of my back."
Roosevelt arrived at the house around 11:00 p.m. accompanied by appellant, who wanted to use the Lewises' telephone. Green was still there. Roosevelt directed appellant to the phone, which was located on the kitchen table where Green was sitting. Roosevelt then left the room, with Green and appellant alone in the kitchen. According to appellant, as he reached for the phone, Green "wheeled around in his chair, reaching for his back pocket." Appellant pulled out a knife from his belt and stabbed Green in the chest. Green pounced on appellant, and appellant "just started stabbing at [Green] trying to get him off."
Roosevelt ran back to the kitchen and saw appellant stabbing Green, who ran down the hallway toward the rear of the house. Roosevelt saw appellant pursue Green down the hall and stab him in the back. Appellant denied doing so and claimed that he ran from the house as soon as Green headed for the hall.
Georgia was in the bathroom at the time. She heard a thud against the wall, looked out into the hall, and saw blood everywhere. Georgia's father was asleep in an adjacent bedroom and he also heard the noise. He opened the hallway door and Green fell against him and to the floor. Georgia's father ran to the kitchen to see if anyone was there. Green continued down the hall to another bedroom, where Georgia's mother was asleep. He collapsed on the bedroom floor. The police department was immediately notified.
Green's brother, Charles Ramsey, lived down the street from the Lewis home. He heard the commotion and ran to investigate. He was told that appellant had stabbed Green and Ramsey began driving around, looking for appellant. Within a few minutes, he spotted appellant in a phone booth outside a convenience store. Appellant had a knife, there was blood on his shirt, and, when he saw Ramsey, he fled. Ramsey chased him across a vacant lot, caught up with and tackled appellant. He then disarmed appellant and forced him into the trunk of his car and drove back to the Lewis house, where a crowd of people and several police cars had gathered. He turned appellant over to the police, who placed him under arrest. Ramsey took a police officer back to the vacant lot, and appellant's knife was found there. An emergency room physician testified that Green was dead on arrival at Bolivar County Hospital. A steak knife was found in Green's back pocket. It was not the murder weapon.
*1039 Appellant took the stand in his own defense. He testified that on one occasion Green had chased him out of the Lewis house with a pistol; that on the evening of the stabbing Green had threatened him with a knife; that he armed himself with a knife as a precaution against any attack by Green; that he went to the Lewis house that night only to use the telephone; and that he stabbed Green in self-defense. The only other witness for appellant was his cousin.

I.

THE LOWER COURT ERRED IN DECLINING TO TRANSFER APPELLANT TO THE YOUTH COURT AND TO QUASH THE INDICTMENT.
On May 7, 1986, the day after the homicide, the Cleveland Police Department filed a petition in the Youth Court of the Second Judicial District of Bolivar County to detain appellant. He had been arrested and was already in custody at that time. The Youth Court summarily issued a custody order authorizing the detention of appellant. On May 8, the Youth Court entered an order to the effect that it had no jurisdiction over appellant. All subsequent proceedings against appellant were brought in the Circuit Court of the Second Judicial District of Bolivar County.
Appellant filed a motion to quash the indictment and transfer the appellant to Youth Court. At the pretrial hearing, the Youth Court judge testified that a Cleveland police officer presented the May 7 Petition to Detain at the judge's house and that the judge there issued the detention order. Appellant was neither present nor represented by counsel, the judge made no inquiry as to the particulars of the matter, and no sworn statement was offered by the officer. The youth court judge answered, "My consideration is that I found I had no jurisdiction to begin with; it was not a transfer order within the transfer statute." Appellant contends his case was not properly within the jurisdiction of the circuit court and that his conviction is therefore void.
Mississippi Code Annotated § 43-21-151 (1972) sets forth the jurisdiction of the Youth Court:
The Youth Court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child, or a dependent child.
MCA § 43-21-105(i), (j) (Supp. 1986) further delineates the jurisdiction of the Youth Court:
(i) "Delinquent child" means a child who has reached his tenth birthday and who has committed a delinquent act.
(j) "Delinquent act" is any act, which if committed by an adult, is designated as a crime under state or federal law, or municipal or county ordinance other than offense punishable by life imprisonment or death. A delinquent act includes escape from lawful detention.
Appellant was charged with murder, a crime punishable by life imprisonment. Without question, murder is a crime excepted from the jurisdiction of the Youth Court. The circuit court had the exclusive jurisdiction over appellant for disposal of the murder charge. Johnson v. State, 512 So.2d 1246 (Miss. 1987); Winters v. State, 473 So.2d 452 (Miss. 1985); Bougon v. State, 405 So.2d 101 (Miss. 1981).
The assigned error is rejected.

II.

THE LOWER COURT COMMITTED ERROR IN ADMITTING INTO EVIDENCE STATE'S EXHIBIT S-12, A SERIES OF PHOTOGRAPHS OF THE VICTIM REFLECTING THE BLOODY SCENE AND WOUNDS ON THE VICTIM.
Appellant objected to the admission into evidence of nine (9) color photographs offered by the State during the testimony of Cleveland Police Officer William Quinton, which depicted the following:
S-4 Hallway of the Lewis house, showing blood dripping from the walls into pools on the floor
S-5 Bedroom of Lewis house, showing the head and shoulders of victim in a *1040 blood-soaked shirt, with blood on the floor and blood dripping from the door jamb
S-6 Full photo of victim on the bedroom floor, lying in a large pool of blood
S-7 Morgue photo, showing deep chest wound and tape measure
S-8 Morgue photo, showing cuts on upper arm and tape measure
S-9 Morgue photo, showing cut on elbow
S-10 Morgue photo, showing victim (from waist up) on table in blood-soaked shirt with cut on forearm
S-11 Morgue photo, showing deep wound to side around the waist area with tape measure
S-12 Morgue photo, showing cut in waistline of pants just above back pocket
If photographs are relevant, the mere fact that they are unpleasant or gruesome is no bar to their admission in evidence. Watson v. State, 483 So.2d 1326, 1328 (Miss. 1986); Cardwell v. State, 461 So.2d 754 (Miss. 1984); Roberts v. State, 458 So.2d 719 (Miss. 1984); Dase v. State, 356 So.2d 1179 (Miss. 1978). The admission of photographs into evidence is a matter within the sound discretion of the trial judge, and his decision will be upheld unless there is abuse of that discretion. Sims v. State, 512 So.2d 1256 (Miss. 1987); McFee v. State, 511 So.2d 130 (Miss. 1987); Kelly v. State, 463 So.2d 1070 (Miss. 1985). Further, Rule 403, Miss. Rules of Evidence, provides that the trial judge may exclude even relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice.
Exhibits S-4, S-5, and S-6 showed the scene of the crime and the victim and were offered in connection with the testimony of a police officer who described the condition of the scene and the body when he arrived. They supported the testimony of the investigating officer. Hunter v. State, 489 So.2d 1086 (Miss. 1986).
Exhibits S-7 through S-12 showed the victim on a table at the morgue. S-7 and S-11 showed deep puncture wounds and are evidence of the amount of force used. S-12 shows a slash on the back of the pants, supporting eye-witness testimony that appellant pursued the victim into the hall and stabbed him in the back, which testimony was denied by appellant. S-8 through S-10 show cuts and gashes on the victim's arms. S-11 reflected a two-inch stab wound in the side toward the rear and S-7 reflected a one and one-quarter inch stab wound in the chest. The wounds were inflicted by a fold-type knife, apparently a hunting knife. We are of the opinion that all the photographs had probative value. Alford v. State, 508 So.2d 1039 (Miss. 1987); Johnson v. State, 476 So.2d 1195 (Miss. 1985); Cardwell v. State, 461 So.2d 754 (Miss. 1984); Wiley v. State, 449 So.2d 756 (Miss. 1984); Clingon v. State, 293 So.2d 823 (Miss. 1974).
The assigned Error II is rejected.

III.

THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION FOR A DIRECTED VERDICT.
Appellant contends that the court should have sustained his motion for a directed verdict because the State failed to establish that he committed the crime "with malice or with deliberate mind," and that the verdict was against the overwhelming weight of the evidence, evincing bias and prejudice against the appellant.
We will not repeat the facts which have been set forth hereinabove in discussing this assigned error.
The cases upholding the principle raised by this question are legion. It was stated again recently in Stever v. State, 503 So.2d 227 (Miss. 1987):
The standard of review in judging the sufficiency of the evidence on motion for directed verdict requires that we accept as true all evidence favorable to the State, together with reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond a reasonable doubt, the trial court's denial of the motion must be affirmed. *1041 503 So.2d at 230, quoting Haymond v. State, 478 So.2d 297, 299 (Miss. 1985).
In addition to the stated facts, the exhibits (photographs), without question, showed malice and that the homicide was inflicted with a deliberate mind, i.e., pure butchery.
We are of the opinion that there was a guilt issue presented to the jury. The issue was resolved against the appellant, and that the verdict was supported by the evidence.
The judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.