548 So.2d 125 (1989)
Jimmy Michael STRINGER
v.
STATE of Mississippi.
No. 58578.
Supreme Court of Mississippi.
July 19, 1989.
*126 Merrida P. Coxwell, Jr., Stanfield, Carmody & Coxwell, Jackson, for appellant.
Mike Moore, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
This appeal involves the retrial of a capital murder case from Hinds County Circuit Court. Ray and Nell McWilliams were murdered at their home in Jackson. This twenty-year old, defendant Jimmy Michael (Jimbo) Stringer was indicted, along with others, for capital murder in both of their deaths. The conviction of (Jimbo) Stringer for the capital murder of Ray McWilliams was reported at 500 So.2d 928 (1987) in which his capital murder conviction was affirmed, but his death sentence was vacated and a new sentencing hearing ordered. The instant appeal involves the indictment against Jimbo Stringer for the capital murder of Mrs. Nell McWilliams. At the first trial, Jimbo Stringer was convicted of capital murder, and upon presentation of evidence at the sentencing phase, the jury was unable to agree as to punishment. Therefore, the trial court, pursuant to Miss. Code Ann. § 99-19-103 (Supp. 1988), imposed a sentence of imprisonment for life.
The merits of the first trial were previously before this Court in Stringer v. State, 491 So.2d 837 (Miss. 1986). In that *127 case, Stringer's conviction for capital murder was reversed and remanded for a retrial on both the guilt and sentencing phases. Id. at 841. Following the retrial, Stringer was again convicted and sentenced to life imprisonment, to run consecutively to a previous conviction for aggravated assault.
The defendant in this second trial moved to bar the State from seeking the death penalty on double jeopardy grounds since the first trial resulted in imposition of the life sentence. The trial court granted the motion and prohibited the State from seeking the death penalty. That issue, therefore, is not involved in this appeal.
Following this second conviction for Nell McWilliams' murder and the imposition of another life sentence, Stringer appeals the verdict to this Court, citing as error the following:
(1) THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
(2) THE LOWER COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ORDER JOHN MACK PARKER TO TESTIFY AS A WITNESS IN APPELLANT'S DEFENSE, THEREBY DEPRIVING APPELLANT OF A FUNDAMENTALLY FAIR AND RELIABLE TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION.
(3) THE APPELLANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION OF HEARSAY AND IMPROPER BOLSTERING OF THE PROSECUTION'S WITNESSES.
(4) THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE CERTAIN PHOTOGRAPHS THAT WERE OVERLY GRUESOME AND PREJUDICIAL AND SERVED NO LEGITIMATE EVIDENTIARY VALUE.

I.
Since this factual situation has previously been before the Court in Stringer v. State, 491 So.2d 837, (Jimbo Stringer's first trial on Nell McWilliams' murder), and 500 So.2d 928 (Miss. 1987) (Jimbo Stringer's trial on Ray McWilliams' murder) a recitation of the facts will essentially mirror this Court's statement of the facts from those cases and is not repeated herein in detail, except as necessary to discuss the assignments of error.
Suffice it to say that on June 21, 1982, Ray McWilliams and his wife Nell were brutally murdered in their Jackson, Mississippi home. Arrested and charged with the murders were the appellant Jimmy Michael (Jimbo) Stringer, his father James R. Stringer, John Mack Parker, Mike Medders and Rhonda Brock. 491 So.2d at 838. Whenever necessary, this opinion will refer to the appellant as "Jimbo" or "Jimbo Stringer" to avoid confusing him with his father.
At each of Jimbo Stringer's trials (including the case sub judice) the two principal witnesses were Mike Medders and Rhonda Brock. They testified at trial that they met with James Stringer on the day of June 21, 1982 to plan the events which were to transpire later that evening.
James Stringer was a gold, silver, and jewelry dealer who had previously done business with Ray McWilliams, who operated a similar business from his home on Cooper Road. Testimony revealed the elder Stringer was under the impression that McWilliams kept large sums of money in a safe in his home. McWilliams did in fact have a large amount of money in the house, including over $2900.00 in his wallet and more than $29,000.00 in the safe.
The elder Stringer, Medders, Parker and Brock met early on the evening of June 21 at James Stringer's apartment. Although apparently not a participant in the original planning of the crime, Jimbo Stringer was invited to join the group once he dropped by his father's apartment, an invitation which he accepted. The five participants drove over to the McWilliams' residence and parked in the driveway. James Stringer and Rhonda Brock went to the front door. When McWilliams answered the door, he asked Stringer and Brock to sit and wait for a moment while he put on some pants, since he was clad only in his *128 underwear at the time. Stringer told McWilliams that would not be necessary and pulled out his .357 Magnum pistol. The two men struggled for control of the gun, and in the process, the gun went off, firing into the wall. 491 So.2d at 839.
At some point during this struggle, Jimbo Stringer, Parker and Medders entered the residence through the front door. According to Medders and Brock, Parker then shot and killed Ray McWilliams. Based on testimony from Medders, Brock and Dr. Rodrigo Galvez, the forensic pathologist who performed the autopsy on Mrs. McWilliams, she was kneeling or attempting to crawl away from the scene when Jimbo Stringer placed his shotgun to the back of her head (he was the only person carrying a shotgun) and fired, killing her instantly. Id. at 839.
Fearful of being discovered due to the loud noises, the group hurriedly left the premises, and in the process, Medders and Brock claim that Jimbo Stringer dropped one of the black gloves he was wearing. Each of the participants in the crime was eventually arrested.
Following this Court's reversal of Jimbo Stringer's conviction, he was retried on May 26-29, 1987. Stringer did not testify at either the first or second trial. On retrial, he was again convicted and received a life sentence.

II.

WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW?
Under Stringer's first assignment of error, he claims the verdict in the case was against the overwhelming weight of the evidence. This Court disagrees. In this Court's opinion reversing Stringer's first conviction the following language appears:
Suffice it to say that there was substantial evidence in the record from which the jury could have concluded that Jimbo Stringer shot and killed Nellie S. McWilliams while he was engaged with the others in an attempt to rob Birty Ray McWilliams.
Stringer v. State, 491 So.2d 837, 839 (Miss. 1986) (Emphasis added). The evidence presented on retrial was essentially the same as that offered at the original trial.
The principal witnesses for the State were Mike Medders and Rhonda Brock, two of Stringer's associates in the commission of this crime. Although both witnesses admitted to alcohol and drug abuse during the time frame surrounding the murders, and Brock also admitted to having worked as a prostitute in the past, the jury obviously found their testimony credible. It is the jury's function to assess the credibility of each witness that testifies at trial. Davis v. State, 510 So.2d 794, 796 (Miss. 1987); Harveston v. State, 493 So.2d 365, 370 (Miss. 1986).
Officer Lou Davis of the Jackson Police Department and a neighbor of the McWilliams', testified that he heard two gunshots and the sound of a shotgun blast at approximately 9:15 p.m., which is the time frame in which the murders occurred. It has already been noted that Jimbo Stringer was the only person who was carrying a shotgun during the commission of this brutal crime. There was also testimony from James Skinner, who had sold Jimbo Stringer a special-order shotgun in 1980.
Dr. Rodrigo Galvez, a forensic pathologist, testified about the nature of the shot that killed Mrs. McWilliams, namely that it had been fired at a downward angle, as if Mrs. McWilliams was kneeling or crawling when she was murdered. He based these conclusions on the pattern of brain tissue on the walls and floor, and by the portion of Mrs. McWilliams' head that had been blown away. His testimony in that regard corroborated the stories of Medders and Brock.
This Court's standard of review when the sufficiency of the evidence is challenged is both familiar and stringent:
Where such a point is presented to this Court on appeal, we must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the State's case  in the *129 light most favorable to the State. Williams v. State, 463 So.2d 1064, 1067 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984); Callahan v. State, 419 So.2d 165, 174 (Miss. 1982); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the verdict must be accepted as true. Spikes v. State 302 So.2d 250, 251 (Miss. 1974) We may reverse only where with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Cook v. State, 467 So.2d 203, 208-09 (Miss. 1985); Bullock v. State, 447 So.2d 1284, 1286-87 (Miss. 1984); Dickerson v. State, 441 So.2d 536, 538-40 (Miss. 1983). Matters regarding the weight and credibility to be accorded evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984); Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980).
Davis v. State, 510 So.2d 794, 796 (Miss. 1987) (quoting Fisher v. State, 481 So.2d 203, 212 [Miss. 1985])
Having examined the abundance of evidence in this case against Jimbo Stringer, this Court is of the opinion that it cannot be said that the verdict was against the overwhelming weight of the evidence. Therefore, there is no merit to this assignment of error.

III.

DID THE LOWER COURT COMMIT REVERSIBLE ERROR BY REFUSING TO ORDER JOHN MACK PARKER TO TESTIFY AS A WITNESS IN APPELLANT'S DEFENSE, THEREBY DEPRIVING APPELLANT OF A FUNDAMENTALLY FAIR AND RELIABLE TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION?
As noted earlier, John Mack Parker was one the five people arrested in connection with the McWilliams murders. At Jimbo Stringer's retrial, Parker was called as a witness by Stringer. On the stand, Parker invoked the Fifth Amendment of the U.S. Constitution, claiming that if he testified, he feared that he would be opening himself up to possible prosecution for perjury. It was conceded by both sides that Parker had already pled guilty to a perjury charge based on prior testimony he had given at Jimbo Stringer's first trial. The trial court allowed Parker to invoke his Fifth Amendment rights and refuse to testify. In lieu of Parker's live testimony, the trial court allowed both Stringer and the State to read into evidence virtually all of Parker's prior testimony from Stringer's first trial.
Stringer now contends on appeal that the trial court erred by not requiring Parker to testify at the retrial. For two reasons, this claim by Stringer is meritless. Both the Mississippi Rules of Evidence and the Mississippi Code Annotated address attempts by a party at trial to use the testimony of one who has been convicted of perjury. Section 13-1-11 of Miss. Code Ann. reads as follows:
§ 13-1-11. Conviction, except for perjury or subornation of perjury, as no disqualification.
A conviction of a person for any offense, except perjury or subornation of perjury, shall not disqualify such person as a witness, but such conviction may be given in evidence to impeach his credibility. A person convicted of perjury or subornation of perjury shall not afterwards be a competent witness in any case, although pardoned or punished for the same.

(Emphasis added)
Along much the same lines, Rule 601 of the M.R.E. reads as follows:
RULE 601. GENERAL RULE OF COMPETENCY

Every person is competent to be a witness except as restricted by Mississippi Code Sections 13-1-5 (competency of spouses) and 13-1-11 (persons convicted of perjury or subornation of perjury), or by these rules.
(Emphasis added)
Thus, the issue of Parker asserting his Fifth Amendment right not to testify is *130 actually irrelevant to the disposition of this assignment of error. Under the clear and unequivocal language of § 13-1-11 and Rule 601, he was prohibited from testifying in the first place.
Although Miss. Code Ann. § 13-1-11 and Rule 601 are dispositive of this assignment of error, they were, not surprisingly, barely mentioned in Stringer's brief. The focus of his attack under this assignment is instead the trial court's acquiescence in John Mack Parker's invocation of his Fifth Amendment rights. Unfortunately for Stringer, an examination of case law reveals that the trial court was not in error when it allowed Parker to claim the protection of the Fifth Amendment.
From studying the record, Parker's specific concern appeared to be that statements he made at Jimbo Stringer's retrial might be used against him as the basis for new charges of perjury. When Stringer's counsel asked the trial court to force Parker to testify, the following exchange took place:
BY MR. BUCKLEY: Our position is, Your Honor, that this Defendant  this witness, I'm sorry, has pled guilty to the offense charged here. He's pled, in fact, to the offense I wanna ask him about, in fact two of them. He's pled guilty to two and he's serving time on them. Also, at a former trial of this cause, as is reflected in the exhibit for identification, the last one, he was called and testified freely and voluntarily and then by those acts, he waived his right to claim the privilege against self-incrimination.
BY THE COURT: He has no rights on self-incrimination as far as the offense arising out of the occurrence on June the 21st of 1982 since he has pled guilty to those charges. He does have the right to claim the Fifth Amendment as far as any possible perjury charges and you have not supplied me with the transcript of all of his testimony each time he's testified and if you expect me to rule, then you've got to furnish me with the benefit of those records. I cannot rely on my memory in that regard. In the absence of that, I'll have to rely on Mr. Parker's decision of whether his  any testimony he might give today could possibly result in a perjury charge.
(Emphasis added)
After further discussion, the trial court issued the following ruling:
... my ruling is that you cannot be forced to testify on anything that might result in a perjury charge ... that is, any testimony on a material point that varies from your previous testimony.
The benchmark for analyzing Fifth Amendment issues in the present context is Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). In that case, the U.S. Supreme Court stated the following concerning the invocation of Fifth Amendment rights:

The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. ... But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer ... The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself  his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified ... and to require him to answer if "it clearly appears to the court that he is mistaken." ... However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising *131 the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." ...
341 U.S. at 486-87, 71 S.Ct. at 818, 95 L.Ed. at 1124 (citations omitted) (Emphasis added). See also, U.S. v. Whittington, 786 F.2d 644, 645-46 (5th Cir.1986); U.S. v. Goodwin, 625 F.2d 693, 700-01 (5th Cir.1980).
This Court has cited Hoffman, supra, on more than one occasion. Both In re Knapp, 536 So.2d 1330, 1334 (Miss. 1988) and particularly Mississippi State Bar v. Attorney L, 511 So.2d 119, 123-24 (Miss. 1987) quote extensively the concepts first expressed in Hoffman.
The Fifth Circuit has also addressed the issue of the extent of Fifth Amendment protection, holding that "if the witness is still subject to prosecution for other crimes which his testimony might tend to reveal, the privilege remains." In re Bryan, 645 F.2d 331, 333 (5th Cir.1981). Another Fifth Circuit decision relied on heavily by the trial court is almost directly on point. In U.S. v. Wilcox, 450 F.2d 1131, 1141 (5th Cir.1971), the Court wrote the following:
And so when a witness is asked a question that could show that he had already committed a crime, i.e., perjury at a prior trial, his refusal to answer is permissible almost by the definition of self-incrimination. He is still criminally accountable for his perjury, but he may not be convicted out of his own mouth over his claim of privilege. Thus the aphorism that one cannot take the Fifth Amendment on the ground that if he testifies he will perjure himself applies only as an excuse for not testifying initially. It does not mean that having once testified, the Fifth Amendment is not available to avoid giving further testimony which might expose the witness to substantial risk of prosecutions growing out of the prior testimony.
The above-quoted passage from Wilcox mirrors the situation presented in the case sub judice. Parker apparently feared the effect of his testimony at Stringer's retrial, not because of the likelihood of further charges being brought against him for his role in the McWilliams' murders, but rather for possible perjury charges flowing from his testimony about the murders at Jimbo Stringer's first trial. Thus, under Hoffman and its progeny, the trial judge properly allowed John Mack Parker to exercise his Fifth Amendment rights.
One final unique factor about this case bears mentioning at this point. Hoffman notes that when assessing a Fifth Amendment claim, a trial judge "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." 341 U.S. at 487, 71 S.Ct. at 818. Or, as stated by the Fifth Circuit recently:
[W]e are mindful that the trial "judge necessarily is accorded broad discretion in determining the merits of a claimed privilege and the measures to be taken as [a] result of a valid fifth amendment claim." The judge must weigh "the implications of the question, in the setting in which it is asked."
U.S. v. Whittington, 786 F.2d 644, 646 (5th Cir.1986) (footnotes omitted).
These statements are especially relevant in this case because the trial judge presiding at Stringer's retrial (Judge Coleman) also presided at the first trial. Although John Mack Parker is not on trial here, references in the record indicate that Judge Coleman presided at his trial as well. In fact, he was also the trial judge when James Stringer, Sr. was convicted of capital murder charges flowing from the same set of facts. Stringer v. State, 454 So.2d 468 (Miss. 1984) Under the circumstances, it is difficult to conceive of a situation in which a trial judge could be more intimately familiar with the circumstances surrounding an assertion of Fifth Amendment rights.
This Court is of the opinion that this assignment of error is without merit. Under § 13-1-11 Miss. Code Ann. (1972) and Rule 601 M.R.E., Parker was incompetent to testify at Stringer's retrial due to his prior perjury conviction. Additionally, under the Fifth Amendment challenge presented by Stringer, Parker was properly *132 allowed to invoke his Fifth Amendment rights by the trial court, and therefore, no error was committed.

IV.

WAS THE APPELLANT DENIED A FAIR TRIAL BY THE INTRODUCTION OF HEARSAY AND IMPROPER BOLSTERING OF THE PROSECUTION WITNESSES?
Under this, Stringer's third assignment of error, he claims that the State was allowed to improperly bolster the testimony given at trial by Mike Medders and Rhonda Brock. This Court disagrees.
Stringer specifically challenges several exchanges between Medders and Brock and the Assistant District Attorney. The following questions are typical of the conduct now being challenged by Stringer on appeal:
MEDDERS
Q. Tell the ladies and gentlemen of the Jury what you told the police detectives about what you saw Jimbo Stringer use with a gun like this.
Q. And what did you tell them about the plan that was involved? Was there any deviation in that?
BROCK
Q. And does that testimony vary one bit from what you've told this jury about him having one beforehand?
Each of these questions was asked by the State during redirect examination. During defense counsel's cross-examination of Mike Medders, Medders was shown a copy of his prior testimony several times in an attempt to reveal inconsistencies in his story. Defense counsel also questioned Medders' ability to testify truthfully about the events surrounding the murders.
Defense counsel also confronted Rhonda Brock with an allegedly prior inconsistent statement she had given to the Kosciusko police department. She was also accused of collaborating with Medders to fabricate the testimony implicating Jimbo Stringer in the McWilliams' murders. Stringer's counsel also explored Brock's possible motives for testifying against Stringer, namely the possibility that she would be granted leniency in exchange for her testimony against Stringer.
Stringer also challenges several questions that were asked of Detective Robert Jordan of the Jackson Police Department. Although these questions were asked on direct, instead of redirect examination, they were used for the limited purpose of ascertaining the nature of what was learned from Rhonda Brock during the taking of her statement, and then comparing this information to Medders' story. This was done chiefly to explore the likelihood of Medders and Brock jointly plotting out their testimony, an area which had already been delved into earlier by Stringer's counsel during his cross-examination of Rhonda Brock.
In the opinion of this Court, none of these allegations by Stringer have merit. Rule 801(d)(1)(B) of the Mississippi Rules of Evidence specifically addresses this issue.
RULE 801 DEFINITIONS
(d) Statements Which Are Not Hearsay. A statement is not hearsay if:
(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ...
(B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive .. .
(Emphasis added)
Rule 801(d)(1)(B) has only been discussed by this Court on a few occasions. In Ponthieux v. State, 532 So.2d 1239, 1247-48 (Miss. 1988) and Irving v. State, 498 So.2d 305, 317 (Miss. 1986), the Court quoted the above-cited portion of Rule 801 and then discussed the applicability of the rule based on the particular circumstances of each of the respective cases.
Following the same factual analysis here, this Court concludes that Rule 801 is applicable. In each of the complained-of instances, the questions asked of the witnesses *133 occurred on redirect examination or under equivalent circumstances. In other words, the questions were being posed in response to allegations raised by defense counsel on cross-examination. The circumstances under which Rule 801(d)(1)(B) is to be applied seem tailor-made for a situation such as this.
Under the facts of this case, this Court perceives no error in the trial court's admission of the testimony in question.

V.

DID THE TRIAL COURT ERR BY ADMITTING INTO EVIDENCE CERTAIN PHOTOGRAPHS THAT WERE OVERLY GRUESOME AND PREJUDICIAL AND SERVED NO LEGITIMATE EVIDENTIARY VALUE?
Under Stringer's final assignment of error, he challenges the admission of several photographs of Nell McWilliams' body taken at the scene of the crime. The discussion of the admissibility of the photographs in the appellant's brief is confined to Exhibits 12, 13 and 18.
In Stringer v. State, 500 So.2d 928, 933-34 (Miss. 1986), which addressed deficiencies in Jimbo Stringer's sentencing hearing, this Court considered the "gruesome" nature of Exhibits 12 and 13 and reached the following conclusion:
Over the objection of defense counsel, the state introduced pictures of Mrs. McWilliams. The initial introduction was of three photographs of Mrs. McWilliams' body, as it appeared at the scene of the murder. These were introduced during the testimony of L.E. Davis, of the Jackson police, who was the McWilliamses' neighbor, and discovered the bodies. The angle of the body in those photographs has the head pointed away from the camera, and, thus, does not fully show the extent of Mrs. McWilliams wounds. Prior to the testimony of Dr. Galvez, the state introduced slides of Mrs. McWilliams' body. The two slides admitted appear to be essentially shot from the same angle as the photographs. Both the slides and the photographs, while not showing the extent of the wound to Mrs. McWilliams' head, do clearly show fragments of her skull and brain on the floor and on the wall... .
It has long been the position of this Court that photographs of bodies may be admitted into evidence where they have probative value, and where they are not so gruesome as to be overly prejudicial and inflammatory. Johnson v. State, 476 So.2d 1195, 1206 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985).

The pictures of Mrs. McWilliams are not overly gruesome. ...
(Emphasis added.)
This discussion of Exhibits 12 and 13 is dispositive of the issue of their admissibility and/or gruesomeness and is without merit.
The final photograph, Exhibit 18, depicts Mrs. McWilliams' body from a different angle. In this photograph, her body has been turned over so that she is lying on her back facing upward. From this perspective, the extent of the wound to the head is more obviously apparent. Additionally, there appears to be a greater amount of brain tissue, blood and other unspecified fragments visible to the naked eye than in the other photographs. Stringer claims that the sole purpose for introducing this photograph into evidence "was to prejudice the jury against the defendant." These photographs are not nearly as gruesome/prejudicial as those in Donald Eugene McNeal v. State, No. 07-58333, 551 So.2d 151 (1989).
The Mississippi Rules of Evidence address the relevancy of evidence and the limitations on admissibility. Rule 401 provides a general definition of relevant evidence. In the context of this case, photographs of the murder victim must almost certainly be considered "relevant." However, Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless *134 presentation of cumulative evidence." Stringer maintains that Exhibit 18 fits squarely under the category of such prejudicial evidence.
This Court has held that, as a general rule, the admission of photographs into evidence "is a matter within the sound discretion of the trial judge, and his decision will be upheld unless there is abuse of that discretion." Boyd v. State, 523 So.2d 1037, 1040 (Miss. 1988). See also, Sims v. State, 512 So.2d 1256, 1258 (Miss. 1987); McFee v. State, 511 So.2d 130, 134 (Miss. 1987) The State offered two reasons to justify the admission of Exhibit 18 into evidence. First, testimony indicated that Jimbo Stringer was the only person at the crime scene wielding a shotgun. The State asserted that the photograph in question accurately reflected "the force and violence" a shotgun would cause, as opposed to a pistol or handgun. This Court has approved admitting photographs for this reason. Koch v. State, 506 So.2d 269, 271 (Miss. 1987); Cardwell v. State, 461 So.2d 754, 760 (Miss. 1984)
The second justification offered by the State for admitting the photograph was that it corroborated the expert testimony of Dr. Rodrigo Galvez. Dr. Galvez testified that Exhibit 18 was the only photograph offered which reflected the exact nature of the injury, since the other photographs chiefly showed the position of the body only. He also testified that this photograph showed very clearly that brain and other tissue was splattered on the lower part of the door and the floor, instead of on the ceiling or the upper portion of the wall. This corroborated earlier testimony to the effect that Mrs. McWilliams was kneeling or crawling when she was shot.
It cannot be disputed that the photographs of Mrs. McWilliams were unpleasant. However, this Court has held on prior occasions that this, standing alone, is not an adequate ground to bar its admission. Boyd, supra at 1040; Watson v. State, 483 So.2d 1326, 1328 (Miss. 1986) In the case sub judice, the unpleasant nature of the photograph is insufficient to justify reversal of the verdict. This Court concludes that the pictures taken of Nell McWilliams' body at the scene of the crime and later admitted into evidence were not unduly prejudicial; therefore, this assignment of error is without merit.
For the foregoing reasons, it is the opinion of this Court that the jury verdict and life sentence should be affirmed in all respects.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P. JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.