KING, C.J., for the Court.
¶ 1. On March 7, 2005, Robert White, Jr., (Robert) was indicted for the murder of Edward Earl Shelly. After a jury trial held on November 14, 2005, Robert was convicted of manslaughter. Aggrieved, he appeals his conviction and alleges the following issues: (1) whether the State improperly bolstered its witness’s testimony; (2) whether the State improperly characterized the testimony of a defense witness; (3) whether the evidence was insufficient as a matter of law, or whether the evidence was contrary to the weight of the evidence; and (4) whether there existed cumulative error that should cause a new trial.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. In the early morning hours of May 9, 2004, Robert drove his ear to the Watts Club, a nightclub in Schlater, Mississippi. When he arrived at the club, he never went inside the club. Instead, he stayed outside and talked with James Davis, a friend of his. They left the front of the nightclub and went to look at Robert’s eighteen-wheel truck, which was parked a short distance from the nightclub. At the same time, Tyrone Brown, Jr., Shelly’s cousin, was sitting on the back of Shelly’s car speaking with an unnamed female in front of the club. Shelly came out of the club and joined Brown and the female.
¶ 4. Shortly thereafter, Robert left Davis and got into his car. As he drove past Shelly and Brown, he said something. However, at trial there was some disagreement as to what Robert said as he drove past. Brown testified that Robert said, “disrespectful niggers” as he passed. *417 However, Robert testified that he merely said, “y’all be cool, I’ll catch y’all when I get back.”
¶ 5. Robert continued on and then stopped at the end of the street and proceeded to put his car in reverse. When Robert stopped and exited the vehicle, Shelly started to proceed toward Robert. As Shelly was moving toward Robert, he began yelling, cussing, and threatening Robert. After the two exchanged words, Robert turned to walk away. As Robert turned away, Shelly continued toward him. Robert then turned back around and fired one shot from a pistol he was carrying. The shot struck Shelly slightly above his left eye. The shot was later determined to be fatal.
¶ 6. After firing the shot, Robert got in his car and left the immediate area of the club. Investigator Theo White (Investigator White), took Robert into custody. While in custody, Robert gave a statement about the previous events to Investigator White. Additionally, Investigator White recovered a pistol from Robert’s vehicle. Starks Hathcock, an expert witness, was able to testify conclusively that the bullet recovered from Shelly’s body was fired from Robert’s pistol.
¶ 7. Robert was then arrested and subsequently indicted for the murder of Shelly. After a full trial, a jury found Robert guilty of the lesser-included offense of manslaughter. Robert filed a motion for a new trial or, in the alternative, judgment notwithstanding the verdict, which the trial court denied.
¶ 8. Robert then timely appealed.
ANALYSIS
¶ 9. On appeal, Robert alleges that four separate errors were committed. These errors are: (1) whether the State improperly bolstered its witness’s testimony; (2) whether the State improperly characterized the testimony of a defense witness; (3) whether the evidence was insufficient as a matter of law, or whether the evidence was contrary to the weight of the evidence; and (4) whether there existed cumulative error that should cause a new trial.
I. Whether the State improperly bolstered its witness’s testimony.
¶ 10. Robert’s first allegation of error is that the trial court erred when it overruled his objection to the prosecution’s bolstering of Brown on redirect. During the State’s redirect of Brown, the following occurred:
STATE: Okay. And you’re here as a witness on behalf of who?
BROWN: Edward Shelly.
STATE: Okay. The deceased, right.
BROWN: Correct.
STATE: So you could have come in here and yeah, I saw him but you didn’t; right?
BROWN: Correct.
DEFENSE COUNSEL: Your Honor, that’s improper redirect.
STATE: Because you’re telling the truth.
BROWN: Correct.
DEFENSE COUNSEL: He’s bolstering his witness, or attempting to.
BY THE COURT: Well, I’m going to overrule.
¶ 11. The admission and exclusion of evidence is left to the discretion of the trial court. Stewart v. State, 881 So.2d 919, 924(¶ 17) (Miss.Ct.App.2004). Robert correctly states in his brief that “a witness’s unimpeached or unquestioned credibility may not be bolstered by any means[.]” Manning v. State, 929 So.2d 885, 895(¶ 29) (Miss.2006) (quoting Conner v. State, 632 So.2d 1239, 1258 (Miss.1993) *418 (overruled as to the admissibility of the willingness to take a lie detector test)). In Manning, the supreme court dealt with the issue of whether a witness’s willingness to take a lie detector test was admissible. While this ease does not address a lie detector test in any form, the premise that a witness’s credibility should not be bolstered, unless it has been attacked still holds true.
¶ 12. The State responds by alleging that Brown’s credibility had been attacked during cross-examination and that it was permissible to allow the bolstering of Brown’s testimony. The State cites to Stringer v. State, 548 So.2d 125, 132-33 (Miss.1989), for support that questions such as those posed by the State are proper on redirect examination when the witness’s credibility has been challenged on cross-examination. While Stringer did involve “bolstering” questions asked on redirect, the witnesses had been confronted with prior inconsistent statements on cross-examination.
¶ 13. The issues that were addressed on cross-examination did not impeach or question the credibility of Brown. The State alleges that Robert’s counsel attempted to impeach how and under what lighting conditions he saw Robert lower his hand with a pistol in it after a shot was fired. However, defense counsel never impeached or questioned the credibility of Brown. Brown was questioned about how he saw Robert after the shot was fired. He testified that he was sitting on the back of Shelly’s car paying attention to a female. He further testified that Shelly and Robert were several feet from the front of the same car.
¶ 14. Then the following exchange occurred between defense counsel and Brown:
BY DEFENSE COUNSEL: Okay. And, now, when you say that when you heard the shot, you went to the ground?
BROWN: No, sir.
BY DEFENSE COUNSEL: Well, didn’t you say that when you heard the shot, you went to the ground?
BROWN: No. I said I ducked.
BY DEFENSE COUNSEL: I thought you said you ducked to the ground.
BROWN: No, I did not.
BY DEFENSE COUNSEL: Did not. You just did like this (indicating), or demonstrate—
BY DEFENSE COUNSEL: If I may ask him to, Your Honor.
BY THE COURT: You may.
BY DEFENSE COUNSEL: Demonstrate what you mean by you ducked.
After Brown demonstrated how he ducked to the jury, the defense counsel moved on to a different topic. As for the lighting in the area, Brown stated that the area was very well lit, with a city light right next to the car.
¶ 15. While defense counsel brought out testimony and expounded on points more thoroughly than the prosecution, it did not impeach or question Brown’s credibility. Therefore, the bolstering of his testimony was improper, and the trial court should have sustained the objection. However, this error was merely harmless. On redirect, the bolstering comment focused on whether Brown saw Robert lowering his hand with a pistol in it after the shot was fired. There was very little doubt from the evidence presented at trial that Robert shot Shelly. The bullet found in Shelly’s body was matched to Robert’s pistol. Further, Dr. Hayne testified that the shot was fired from a close proximity to Shelly. Shortly after the incident, Robert gave a statement to Investí- *419 gator White that he was the one who shot Shelly.
¶ 16. These facts were uncontested by the defendant. The question in this case was whether Robert shot Shelly in self-defense. Even Robert acknowledges this fact in his brief. Since Brown admitted several times that he did not know what happened between Shelly and Robert prior to hearing the shot fired, he was unable to provide any relevant information to this important issue. Therefore, this error was harmless.
II. Whether the State improperly characterized the testimony of a defense witness.
¶ 17. Robert alleges that the prosecution wrongfully stated that Davis, one of the defense witnesses, “lied in open court.” Robert alleges that this improper characterization occurred during the prosecution’s cross of Davis. The prosecution was attempting to cross-examine Davis about whether he saw a gun in Robert’s hand when Robert got out of the car.
1118. On cross-examination, Davis was questioned about the statement he had previously made to police. In the statement, Davis had said Robert had a gun in his hand when he got out of the car. However, Davis alleged that the statement had been changed from what he actually told police. When asked at trial, he refuted that he could see the gun when Robert got out of the car. He stated that Robert had a gun previously and that everyone saw it.
DAVIS: I didn’t say I could see the gun in his hand. I said he had a gun previously that night. Everybody saw it.
STATE: Okay. So everybody saw that he had a gun previously that night.
DAVIS: Previously that night.
STATE: That’s your testimony today.
DAVIS: Right.
STATE: Okay. So if Investigator White got up and said that you did, in fact, say that, he’d be lying[?]
DAVIS: If it’s really like that, that I say I saw a gun when he got out of the car, yes.
STATE: Okay. We’re getting somewhere now. So you need to go on and tell the truth.
DAVIS: I am telling the truth.
STATE: Well, then why a second ago did you say no, he didn’t have a gun when he got out of the car. You lied in open court.
DAVIS: What exactly do you mean?
At this point, the defense noted to the trial court that this was an improper depiction of Davis’s testimony.
¶ 19. The State argues that this point is waived, because the defense never “objected” to the testimony. However, the judge held a bench conference and acknowledged that the State had improperly characterized Davis’s testimony and that there had been an objection. The discussion during the bench conference further revealed that the State thought Davis had acknowledged on the witness stand that he saw Robert with a gun when he exited the vehicle. After the bench conference, the trial court instructed the State to ask Davis again whether he saw Robert exit the vehicle with a gun. After asking the question several times in several different ways, Davis consistently stated that he did not see Robert with a gun when he exited the vehicle.
¶ 20. Robert now argues that the trial court did not sustain its objection and correct the error of the State. Further, Robert states that the error was highly prejudicial and requires reversal. Robert cites to Dunaway v. State, 551 So.2d 162, 163 (Miss.1989) for support. Dunaway pro *420 vides that “the test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney’s improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice.” Id.
¶ 21. We cannot now say that the comment made by the State should result in reversal. Further, Robert states in his brief that “had the [t]rial [c]ourt simply sustained the objection, the prosecution’s error might have been corrected.” While the trial court did not specifically “sustain” the objection, it did attempt to correct the situation. It was clear from the bench conference, that the only individual confused as to what Davis had testified to was the State. To clear up any confusion as to the statement, the trial court had the State ask the question again. The State then proceeded to ask Davis several different ways if he saw Robert exit the vehicle with a gun. Each time, Davis repeated that he did not see a gun at that time.
¶ 22. Since the trial court had the State ask the question again, it helped to cure any prejudice that might have resulted. Therefore, the trial court did not commit error when it was presented with this situation. This allegation of error is without merit.
III. Whether the evidence was insufficient as a matter of law, or whether the verdict was contrary to the weight of the evidence.
¶23. Robert attempts to include two issues in this allegation of error. While we would normally address these issues separately, Robert couches these issues on the premise that the State was not able to overcome his theory of justifiable self-defense. The supreme court has held that “[t]he issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury.” Dubose v. State, 919 So.2d 5, 7(¶ 11) (Miss.2005) (quoting Wade v. State, 748 So.2d 771, 774(¶ 11) (Miss.1999)).
¶ 24. Therefore, we will address whether the verdict was contrary to the weight of the evidence. “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The supreme court has further held that:
[i]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgement [sic] might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
Dunn v. State, 891 So.2d 822, 826(¶ 25) (Miss.2005)(quoting McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). The evidence should be weighed in the light most favorable to the verdict. Bush, 895 So.2d at 844(¶ 18).
¶ 25. From the evidence presented at trial, we cannot say that the verdict is against the overwhelming weight of the evidence. While Shelly approached Robert in a threatening manner, Robert’s pretrial statement to Investigator White was that he saw Shelly ball-up his fists. He never stated that he saw any kind of weapon on Shelly. Further, no one saw Shelly with a weapon on the night of the shooting, and no weapon was found on Shelly after he had been shot. Shelly was drunk[1] as he advanced toward Robert, cursing and *421 threatening him. In addition, Robert testified that Shelly spit in his face prior to the shooting.
The supreme court has held that:
where an attacker is much larger than the one attacked, the nature of the assault, though only with fists, might be such as to reasonably show that the one being attacked is in danger of great bodily harm, and therefore is justified in the use of a deadly weapon to defend [himjself.
Manuel v. State, 667 So.2d 590, 592 (Miss. 1995). However, Robert and Shelly were about the same size, with Robert weighing about ten more pounds and an inch taller than Shelly. While Robert testified that he received an injury to his arm several years before and was missing a few fingers on his left hand, the jury could have still concluded that he could have defended himself without a weapon when approached by an unarmed man. This was clearly an issue properly left for the jury.
¶ 26. After taking into account the evidence found in the record, we cannot say that reasonable jurors might have reached different conclusions. Therefore, the verdict was not against the overwhelming weight of the evidence.
IV. Whether cumulative error existed.
¶ 27. Robert alleges that in the event that any of the alleged errors are not sufficient to constitute a new trial, if they are taken together, a new trial should be granted. “This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal.” Coleman v. State, 697 So.2d 777, 787 (Miss.1997). While we previously found that the trial court erred by not sustaining an objection to bolstering, it was harmless. Further, it was the only allegation of error, while harmless, that had any merit. It is important to note that Robert is not entitled to a perfect trial. Clark v. State, 891 So.2d 136, 141(¶ 19) (Miss.2004). He is merely entitled to a fair one. Id.
¶ 28. We find that Robert received a fair trial. Therefore, this assignment of error is without merit.
CONCLUSION
¶29. While the trial court committed harmless error in not sustaining an objection to improper bolstering, it ensured that Robert received a fair trial. Further, the trial court corrected the State when it improperly characterized what a defense witness said by having the State restart the line of questioning. Further, the verdict of manslaughter was not against the overwhelming weight of the evidence presented to the jury. Therefore, the judgment of the trial court is affirmed.
¶ 30. THE JUDGMENT OF THE LE-FLORE COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF A TERM OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. Dr. Hayne testified that Shelly had a B.A.C. of .18.