IN THE SUPREME COURT OF MISSISSIPPI
NO. 97-KA-00693-SCT

*ARTHUR L. STEVENSON, a/k/a ARTHUR LEE*
*STEVENSON, a/k/a ARTHUR LEWIS STEVENSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/1997 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EUGENE A. PERRIER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| | JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/31/1998 |
| MOTION FOR REHEARING FILED: | 3/4/99 |
| MANDATE ISSUED: | 5/6/99 |

**BEFORE PRATHER, C.J., McRAE AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## I. STATEMENT OF THE CASE

¶1. This case arises from the fifth trial of the appellant, Arthur L. Stevenson, for the 1974 capital murder of Warren County Deputy Sheriff A.H. "Holly" Koerper. The first trial ended in a mistrial. The second and third trials resulted in convictions and sentences of death, but both judgments were reversed on appeal.[1] As the fourth trial commenced, the appellant entered a guilty plea, which was later invalidated by this Court, in 1996.[2]

¶2. The case was tried, once again, and Stevenson was convicted of capital murder, and sentenced to life in prison. From that judgment, Stevenson appeals, and raises the following issues for consideration by this Court:

**A. Whether the trial court erred in admitting two photographs of the victim?**

**B. Whether the trial court erred in ruling Sheriff Paul Barrett was an unavailable witness in the context of M.R.E. 804 and in allowing the sheriff's prior testimony to be read to the jury, even though the sheriff had been convicted of perjury?**

**C. Whether the trial court erred in denying the defendant's motion for directed verdict or peremptory instruction to dismiss the charge of capital murder?**

**D. Whether the trial court erred in denying the defendant's motion for JNOV, or in the alternative, a new trial?**

¶3. This Court finds that the issues raised by the appellant are without merit. Accordingly, the judgment of the trial court is affirmed.

## II. STATEMENT OF THE FACTS

¶4. On Saturday, July 6, 1974, Arthur L. Stevenson, age 23, was a trusty at the Warren County Jail. Early that morning, Stevenson killed the jailer, A. H. "Holly" Koerper, age 72. Stevenson stabbed Koerper twenty-six times with a large butcher knife, while Koerper begged to be spared, and offered Stevenson the keys to the jail. Another trusty attempted to stop Stevenson, but retreated when Stevenson threatened him with the knife.

¶5. Stevenson then took the keys from Koerper's pants pockets, and ransacked the locked cabinet containing the prisoners' personal belongings. Stevenson locked the door between the other inmates and the telephone/radio room. He unlocked the female cell, and escaped with his girlfriend, an inmate named Geneva Mitchell. Mitchell was scheduled to be tried the following Monday, July, 8, 1974. Stevenson and Mitchell were both apprehended a short time later, in a vacant house near the jail.

¶6. Stevenson and Koerper had been friends, and Koerper thought very highly of Stevenson. Stevenson claimed that, for the first time, on the morning of the murder, Koerper verbally abused him by using racial slurs, and physically abused him by slapping him. Stevenson also testified that he feared for his life and he "lost it" when Koerper slapped him. Stevenson testified that he does not remember the attack, but admitted that he killed Koerper.

## III. LEGAL ANALYSIS

### A. Whether the trial court erred in admitting two photographs of the victim?

¶7. Stevenson first claims that the trial court erred in admitting Exhibits S-5 and S-6, which were 7.5" x 10" photographs of the victim's body, as it appeared when the authorities arrived at the jail.[3] Stevenson argues that the trial judge should have admitted two smaller photographs, which Stevenson concedes were probative of issues concerning the events and the scene of the crime. However, he contends that the two larger photographs were intended to merely accentuate the gore at the scene and prejudice and inflame the jury. In addition Stevenson argues that the trial judge should only have admitted one of the larger photographs, since the two photographs are almost identical.

¶8. This Court's position as to the admissibility of photographs is well settled.

In *Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995), this Court found that photographs of a victim have evidentiary value when they aid in describing the circumstances of the killing, *Williams v. State*, 354 So. 2d 266 (Miss. 1978); describe the location of the body and cause of death, *Ashley v. State*, 423 So. 2d 1311 (Miss. 1982); or supplement or clarify witness testimony, *Hughes v. State*, 401 So. 2d 1100 (Miss. 1981).

The admissibility of photographs rests within the sound discretion of the trial court. *Jackson v. State*, 672 So. 2d 468, 485 (Miss. 1996); *Griffin v. State*, 557 So. 2d 542, 549 (Miss. 1990); *Mackbee v. State*, 575 So. 2d 16, 31 (Miss. 1990); *Boyd v. State*, 523 So. 2d 1037, 1039 (Miss. 1988). Moreover, the decision of the trial judge will be upheld unless there has been an abuse of discretion. *Westbrook*, 658 So. 2d at 849.

*Gray v. State*, No. 96-DP-00241-SCT, 1998 WL 452320, at * 20-21 (Miss. Aug. 6, 1998).

This standard is very difficult to meet. In fact, the "'discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.'" *Brown*, 690 So. 2d at 289; *Holly*, 671 So. 2d at 41. "At this point in the development of our case law, no meaningful limits exist in the so-called balance of probative/prejudicial effect of photographs test." *Chase*, 645 So. 2d at 849 (quoting *Williams v. State*, 544 So. 2d 782, 785 (Miss. 1987)).

*Woodward v. State*, No. 95-DP-00144-SCT, 1997 WL 776557, at *12 (Miss. December 18, 1997).

¶9. In the case *sub judice*, the photographs in Exhibits S-5 and S-6 corroborated Sheriff Barrett's testimony regarding the scene of the crime and the injuries to the victim. They also demonstrated that the victim was wearing a deputy sheriff's uniform at the time of death, which was probative, because the defendant disputed the victim's status as a deputy. Moreover, the photographs showed the victim's age and physical condition, a factor probative of the defendant's claim that he feared for his life when the victim slapped him.

¶10. In fact, Stevenson admits that pictures of the body are probative, but complains of the size (7.5" x 10") and number (two) of the photographs that were admitted. This complaint is without merit. *See Brown v. State*, 682 So. 2d 340, 352-53 (Miss. 1996) (upholding admission of three 8" x 10" color photographs taken of the decedent prior to autopsy); *Stringer v. State*, 548 So. 2d 125, 133 (Miss. 1989) (upholding admission of 3 photographs and 2 slides of the victim's body, all taken from essentially the same angle).

¶11. The two 7.5" x 10" pictures admitted in this case are bloody and unpleasant, but they are not overly inflammatory or prejudicial. Thus, "[g]iven the numerous cases in which the introduction of such photographs has been upheld, the amount of discretion afforded the trial judge in these cases, and the nature of the photographs in the case *sub judice*" the admission of the photographs was not error. *See Woodward*, 1997 WL 776557, at *13. "That is, their probative value outweighed their unpleasantness and/or gruesomeness." *See id.* Therefore, Stevenson's argument to the contrary is without merit.

**B. Whether the trial court erred in ruling Sheriff Paul Barrett was an unavailable witness in the context of M.R.E. 804 and in allowing the sheriff's prior testimony to be read to the jury, even though the sheriff had been convicted of perjury?**

¶12. Stevenson next argues that the trial judge erred in allowing the prior testimony of Sheriff Paul Barrett to

be admitted. Barrett, who testified at Stevenson's 1975 trial, was subsequently convicted of perjury, in 1995. The trial judge declared Barrett unavailable, and, over Stevenson's objection, allowed Barrett's 1975 testimony to be read. The parties then stipulated that Barrett had been convicted of two counts of perjury in the United States District Court for the District of Columbia on October 12, 1995.

¶13. Stevenson argues that the trial judge erred by declaring Sheriff Barrett unavailable and admitting Barrett's prior testimony. Specifically, Stevenson asserts that M.R.E. 804, which defines unavailable witnesses, does not mention convicted perjurers. M.R.E. 804 provides as follows:

> (a) **Definition of Unavailability**. "Unavailability as a witness" includes situations in which the declarant:

> (1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

> (2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

> (3) Testifies to a lack of memory of the subject matter of his statement; or

> (4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

> (5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means; or

> (6) In the case of a child, because of the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused.

> A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

> (b) **Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) *Former Testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

M.R.E. 804 (a), (b) (1).

¶14. As a convicted perjurer, Barrett was incompetent to testify under M.R.E. 601 (b). At the time of Stevenson's trial, M.R.E. 601 (b) provided that "[a] person convicted of perjury or subornation of perjury shall not be a competent witness in any case, even though pardoned or punished for the same."[(4)] The State contends that Barrett's incompetency was an "infirmity", under M.R.E. 804 (a) (4), and, therefore, Barrett

was unavailable to testify, and his former testimony was properly admitted, under 804 (b) (1).

¶15. Thus, the question is, whether an incompetent convicted perjurer under the former M.R.E. 601 (b) is an unavailable witness under M.R.E. 804. Perhaps the most similar Mississippi case is *Stringer v. State*, in which a witness was convicted of perjury (after the original trial, and before the retrial on remand).[5] At the retrial, the witness invoked his Fifth Amendment right against self-incrimination, and refused to testify, on the grounds that he would be subjecting himself to additional perjury charges. The trial judge allowed the former testimony of the witness to be read. This Court held:

> Under § 13-1-11 Miss. Code Ann. (1972) and Rule 601 M.R.E., [the witness] was incompetent to testify at Stringer's retrial due to his prior perjury conviction. Additionally, under the Fifth Amendment challenge presented by Stringer, [the witness] was properly allowed to invoke his Fifth Amendment rights by the trial court, and therefore, no error was committed.

*Stringer*, 548 So. 2d at 131-32.

¶16. Aside from being rendered incompetent by the perjury conviction, the witness in *Stringer* was unavailable under M.R.E. 804, because he invoked the Fifth Amendment privilege against self-incrimination. Thus, *Stringer* does not explicitly address the specific question of whether a convicted perjurer is unavailable under M.R.E. 804. However, *Stringer* does imply that a convicted perjurer is unavailable for purposes of M.R.E. 804. At the very least, *Stringer* establishes a precedent for admitting the former testimony of an unavailable convicted perjurer -- even though the rules of evidence had rendered the convicted perjurer incompetent to testify in person. *See id.*

¶17. Given this authority, the trial court did not err in admitting Barrett's former testimony. This is particularly true, given the fact that Barrett's perjury conviction was admitted for impeachment purposes. *See Wilcher*, 697 So. 2d at 1132 (noting that hearsay declarant's credibility can be attacked under M.R.E. 806 by the use of previous convictions under M.R.E. 609, as if the declarant had testified in person).

¶18. This Court finds that the incompetency of a convicted perjurer under the former M.R.E. 601 (b) is an "infirmity" for purposes of determining availability of a witness under M.R.E. 804. Therefore, the admission of Sheriff Barrett's former testimony was proper. Stevenson's argument to the contrary is without merit.

### C. Whether the trial court erred in denying the defendant's motion for directed verdict or peremptory instruction to dismiss the charge of capital murder?

¶19. Stevenson also argues that the trial judge should have granted his motion for directed verdict or his proposed peremptory instruction on the capital murder charge.

> The standard of review used by this Court for assessing peremptory instructions and directed verdicts is the same:

> In passing upon a motion for a directed verdict, all evidence introduced by the state is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for directed verdict must be overruled.

*Gray v. State*, 549 So. 2d 1316, 1318 (Miss. 1989) (quoting *Guilbeau v. State*, 502 So.2d 639, 641 (Miss.1987)).

¶20. Specifically, Stevenson contends that the victim was "only a jailer" and was not a deputy sheriff, as defined by the applicable capital murder statute. The applicable statute, Miss. Code Ann. 97-3-19 (2) (a) (Supp. 1974), defines capital murder as follows:

(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

(a) Murder which is perpetrated by killing a peace officer or fireman while such officer or fireman is acting in his official capacity or by reason of an act performed in his official capacity, and with knowledge that the victim was a peace officer or fireman. For purposes of this paragraph, the term "peace officer" means sheriff of counties and their deputies, constables, marshals and policemen of cities and towns, game wardens, parole officers, a judge, prosecuting attorney or any other court official, agents of the alcoholic beverage control division of the state tax commission, agents of the bureau of narcotics, personnel of the Mississippi Highway Patrol, and the superintendent and his deputies, guards, officers and other employees of the Mississippi State Penitentiary[.]

Miss. Code Ann. 97-3-19 (2) (a) (Supp. 1974).

¶21. There was ample evidence in this record that Koerper was a deputy sheriff. Stevenson had admitted in a previous trial that he knew Koerper was a sheriff's deputy. Sheriff Barrett testified that, at the time of the murder, Koerper (who had run the jail as a deputy for three different sheriffs) was a deputy sheriff and was required to wear the deputy sheriff's uniform while on duty. Barrett also stated that Koerper was the only deputy in the jail and was in charge of the jail at the time of the murder. Several people testified that Koerper was wearing his uniform and his badge when he was killed. Koerper's name was inscribed on the badge.

¶22. Beth Britt, the Warren County Chancery Clerk, testified that Koerper had signed an oath of office on January 6, 1964. As was customary, the oath did not reflect a county employee's title or official position. From reviewing the records, it appeared that several deputies continued to serve under different sheriffs, without signing new oaths of office. Britt had found numerous errors in the indices of oaths and bonds on other matters. In fact, she opined that there were probably some deputies on the payroll who had never renewed their oaths and did not have their oaths listed in the index.

¶23. Stevenson argues that Koerper was not a deputy sheriff, under Miss. Code Ann. § 19-25-19 (1972), which provided as follows:

Every sheriff shall have power to appoint one or more deputies to assist him in carrying out the duties of his office, every such appointment to be in writing, to remove them at pleasure, and to fix their compensation, subject to the budget for the sheriff's office approved by the county board of supervisors. . . . Such deputies shall have authority to do all the acts and duties enjoined upon their principals. Every deputy sheriff, except such as may be appointed to do a particular act only, before he enters on the duties of office, shall take and subscribe an oath faithfully to execute the office of deputy sheriff, according to the best of his skill and judgment. The appointment, with the certificate of the oath, shall be filed and preserved in the office of the clerk of the board of supervisors.

Miss. Code Ann. § 19-25-19 (1972).

¶24. Stevenson asserts that the State did not meet its burden of proving that Koerper was a deputy, because the State did not produce a written appointment and oath of A. H. Koerper that specifically addressed the office of deputy sheriff.[6] A similar question was considered in *Amerson v. State*, 648 So. 2d 58 (Miss. 1994), a case in which the appellant was convicted of simple assault of a law enforcement officer, for attacking a jailer:

> What is a *de facto* deputy sheriff? One who holds office under the color of appointment and discharges the purported duties of officer in full view of public, without being an intruder or usurper, is at least a *de facto* official. *Carty v. State*, 421 N.E. 2d 1151, 153 (Ind. Ct. App. 1981). A vital element of the *de facto* status of a deputy sheriff requires that the person be acting pursuant to the control and approval and with the consent of the Sheriff. *Arizona v. Ovens*, 4 Ariz. App. 591, 422 P. 2d 719 (1967). Generally other jurisdictions have held that acting under color of appointment or less was sufficient to find *de facto* status. . . . In *Bolding*, this Court recognized that "one acting generally as a deputy sheriff, under written appointment from the sheriff, although not having qualified according to law, is a *de facto* officer and as between third parties his actions are valid." *Alabama and V. R. Co. v. Bolding*, 69 Miss. 255, 263, 13 So. 844, 846 (1891).[7]

> This Court finds that as to Amerson, a third party, [jailer/victim] Young's actions as a deputy sheriff were valid. Even if any deficiencies existed in Young's appointment as deputy sheriff, Young would still have been a *de facto* deputy sheriff when Amerson assaulted Young. Young was acting as jailer under the appointment of Sheriff Miller and pursuant to the control, approval, and consent of Sheriff Miller. At the time of the altercation, Deputy Young was dressed in his uniform and wearing the identification badge signed by Sheriff Miller. Deputy Young was more than a mere bystander at the jail who became involved in a scuffle. Young was a person identifiable to the inmates as a deputy sheriff who had authority over their keep. Amerson acted against the authority he believed Young possessed. Any defects that may have existed in the appointment of Young do not negate the fact that Young was acting under the color of appointment at the time of the assault. Amerson will not be allowed to benefit from administrative failures because these failures were not readily apparent and were unknown to Amerson at the time of the assault. Thus, the Court finds that the enhanced sentencing of Amerson for simple assault against a law enforcement officer is appropriate.

*Amerson*, 648 So. 2d at 61-62 (footnote in original).


¶25. *Amerson* is dispositive. Sheriff Barrett testified that Koerper was a deputy, and was in charge of the jail, pursuant to Barrett's control, consent, and approval. Numerous witnesses testified that, when he was killed, Koerper was wearing a deputy sheriff's uniform and a badge with an inscription of his name. Koerper had, under the administration of a previous sheriff, signed an oath of office. Furthermore, the Clerk admitted that the record of oaths and bonds contained numerous mistakes, which could indicate that Koerper's appointment complied with the statute, but the records were lost or misfiled. Although Stevenson denied knowing that Koerper was a deputy, Stevenson knew Koerper was in charge of the jail, and admitted killing Koerper. Moreover, even Stevenson admitted, in testimony from a previous trial, that he knew Koerper was a deputy sheriff.

¶26. From this testimony, it is clear that Koerper was "more than a mere bystander at the jail who became involved in a scuffle." *See id.* That is, Koerper was a *de facto* deputy sheriff, and Stevenson cannot benefit

from any administrative failures in Koerper's appointment. *See id.*

¶27. Thus, the aforementioned testimony and the reasonable inferences drawn therefrom are sufficient to support a verdict of guilty. Therefore, the trial judge properly denied Stevenson's motion for a directed verdict and his request for a peremptory instruction. Stevenson's arguments on this point are without merit.

### D. Whether the trial court erred in denying the defendant's motion for JNOV, or in the alternative, a new trial?

¶28. Stevenson's final argument is that the evidence in this case is insufficient to support a capital murder conviction, and that, therefore, his motion for JNOV, or in the alternative, a new trial, should have been granted.

¶29. Motions for JNOV question the legal sufficiency of the evidence.

> Upon reviewing the legal sufficiency of the evidence, all of the evidence consistent with the defendant's guilt is accepted as true together with any reasonable inferences that may be drawn from the evidence. This Court may reverse only where the evidence is such that reasonable and fair minded jurors could only find the accused not guilty.

*Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995) (citations omitted).

¶30. Motions for a new trial question the weight of the evidence.

> On appeal, this Court will not grant a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. This Court must accept as true the evidence which supports the verdict, and a reversal is warranted only where the trial court abused its discretion by denying the movant a new trial.

\* \* \*

> The jury must be left to resolve matters regarding weight and credibility of the evidence. It is enough that the conflicting evidence presented a factual dispute for jury resolution.

*Hiter v. State*, 660 So. 2d 961, 964 (Miss. 1995) (citations omitted).

¶31. Stevenson contends that he is guilty of "manslaughter in the heat of passion." Stevenson argues that he is not guilty of murder or capital murder, because there was no evidence of malice aforethought, and asks this Court to reverse and render on the lesser-included offense of manslaughter. The statute under which Stevenson was convicted defined capital murder as:

> "[t]he killing of a human being without the authority of law **by any means or in any manner** . . . which is perpetrated by killing a peace officer or fireman while such officer or fireman is acting in his official capacity or by reason of an act performed in his official capacity, and with knowledge that the victim was a peace officer or fireman.

Miss. Code Ann. 97-3-19 (2) (a) (Supp. 1974) (emphasis added).

¶32. "This statute reflects the [S]tate's special interest in protecting law enforcement officers. To bring a case within the statute, the evidence must reflect that the victim was a peace officer acting in the course of his official duties and that, at the time of the killing, the defendant knew or should have known of this fact." *Hansen v. State*, 592 So. 2d 114, 146 (Miss. 1991) (interpreting a later version of the statute, in which the above-quoted language is identical).

¶33. Thus, under the applicable statute, malice aforethought is not an element of the capital murder of a peace officer. Nonetheless, this Court has acknowledged that a defendant being tried for the capital murder of a peace officer is entitled to a manslaughter instruction, if warranted by the evidence. *See Lanier v. State*, 450 So. 2d 69, 81 (Miss. 1984) (jury might find manslaughter, if it believed that defendant fired weapon "in response to a shot first fired by an officer in a tense, sudden confrontation arising without design of either party, thereby reducing the offense to manslaughter with a corresponding reduction in sentence.")

¶34. Stevenson testified that the elderly, overweight, and relatively shorter Koerper used abusive language (including racial slurs) and slapped him, causing him to fear for his life. Stevenson also stated that he "lost it" and killed Koerper in the heat of passion.

¶35. However, even if malice aforethought were an element of the capital murder of a peace officer, there was evidence that Stevenson was concerned about his inmate/girlfriend's impending trial date. There was also evidence that the drawer containing the murder weapon had been pried open that morning. From this evidence, it could be inferred that Stevenson had planned the murder and the escape.

¶36. Furthermore, there is evidence that Stevenson stabbed Koerper twenty-six times, as Koerper begged to be spared and offered Stevenson the keys to the jail. Stevenson could have stopped stabbing Koerper at any time, and, in fact, was told to do so by one of his fellow inmates. The jury could have inferred that, if Stevenson had not intended to kill Koerper, he would have stopped stabbing Koerper. *See generally Walters v. State*, No. 96-KA-00400-SCT, 1998 WL 512964, at *12-13 (Miss. Aug. 20, 1998) (holding that malice may be impliedly established by the evidence, and, where victim was stabbed twenty-four times, defendant confessed, defendant was bigger than victim, and the jury was instructed on both murder and manslaughter, the jury did not err in convicting defendant of murder).

¶37. In this case, the jury was instructed on manslaughter, murder, and capital murder. "However, the question of whether the defendant has committed murder or manslaughter is ordinarily a question to be resolved by the jury." *Strahan v. State*, No. 96-KA-00470-SCT, 1998 WL 409923, at * 5 (Miss. July 23, 1998). "The jury must be left to resolve matters regarding the weight and credibility of the evidence." *Hiter*, 660 So. 2d at 964. "Once a case is submitted to the fact finder, 'any factual disputes are properly resolved by the jury and do not mandate a new trial.'" *Clark v. State*, 693 So. 2d 927, 931 (Miss. 1997) (citations omitted) ("The circuit court granted an instruction for the lesser-included offense of manslaughter as well as the State's requested instruction for murder. The jurors obviously resolved the fact questions in favor of the State.").

¶38. There is ample evidence in the record that "the victim was a peace officer acting in the course of his official duties and that, at the time of the killing, the defendant knew or should have known of this fact." *See Hansen*, 592 So. 2d at 146. That is, the legal sufficiency and weight of the evidence in this case support the jury's verdict of capital murder. Therefore, the trial judge properly denied Stevenson's motion for JNOV, and, in the alternative, a new trial.

# IV. CONCLUSION

¶39. The issues raised by Stevenson are without merit. For this reason, the judgment of the trial court is affirmed.

¶40. **CONVICTION OF CAPITAL MURDER AND SENTENCE TO LIFE IMPRISONMENT, WITHOUT THE BENEFIT OF PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. In *Stevenson v. State*, 325 So. 2d 113 (Miss. 1975) (hereinafter *Stevenson I*), this Court reversed because the appellant was not granted psychiatric review of competency, and also found error in the venue and the admission of certain autopsy photographs. Thereafter, in *Stevenson v. State*, 354 So. 2d 1095, 1095 (Miss. 1978) (hereinafter *Stevenson II*), this Court reversed, pursuant to *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976), which declared unconstitutional the statute requiring a mandatory death sentence for persons convicted of capital murder.

2. In *Stevenson v. State*, 674 So. 2d 501, 505 (Miss. 1996) (hereinafter *Stevenson III*), this Court voided the plea agreement, pursuant to *Lanier v. State*, 635 So. 2d 813, 817 (Miss. 1994). That is, the plea agreement was declared invalid because the appellant was sentenced to life in prison without parole, and the applicable statute did not provide for or permit such a sentence.

3. As noted by the trial judge, this Court had previously ruled that certain autopsy photographs should not be admitted on remand. *See Stevenson I*, 325 So. 2d at 119. The photographs in the case *sub judice* had been admitted in the previous trial, and were not the objectionable pictures from the autopsy.

4. References to perjury and subornation of perjury were deleted from M.R.E. 601, pursuant to this Court's decision in *Fuselier v. State*, 702 So. 2d 388, 394 (Miss. 1997) ("From now on, we will abandon the old M.R.E. 601, precluding testimony from convicted perjurers, in favor of a rule that allows a convicted witness to testify and that allows cross- examination of the witness regarding the perjury conviction. At that point, the jury should be allowed to make the final determination of the credibility and weight of the witness's testimony.").

5. The State relies on the *Wilcher* cases. *See Wilcher v. State*, 697 So. 2d 1087 (Miss. 1997); *Wilcher v. State*, 697 So. 2d 1123 (Miss. 1997). However, those cases are factually distinguishable. In the *Wilcher* cases, the Sheriff testified in the defendant's 1982 trial, and was later convicted of extortion in 1989. When the case was retried in 1994, the Sheriff was dead. Therefore, the Sheriff was clearly unavailable under M.R.E. 804. The question in the *Wilcher* cases was the admissibility of the extortion conviction for impeachment purposes -- not the availability of the witness and the admissibility of former testimony. Moreover, the crime in the case *sub judice* is perjury, and, in the *Wilcher* cases, the crime was extortion. The version of M.R.E. 601 (b) in effect at Stevenson's trial rendered convicted perjurers incompetent. There is no corresponding rule rendering convicted extortionists incompetent. For all these

reasons, the *Wilcher* cases are distinguishable. *See id.*

6. It could be argued that, as the jailer, Koerper was "appointed to do a particular act only", such that he would be exempt from the requirement of filing an oath under Miss. Code Ann. § 19-25-19 (1972).

7. In *Pointer*, this court found that the authorization of a special deputy to do a special act must be by the sheriff in writing, but such appointment need not, as in the case of a regular deputy, be filed with the clerk of the board of supervisors. *Pointer v. Huffman*, 509 So. 2d 870 (Miss. 1987) (citing *Nelson v. Nye*, 43 Miss. 124, 128 (Miss. 1870)).