BARNES, J.,
 

 for the Court:
 

 ¶ 1. On February 27, 2009, Arvin Phillip Johnson was convicted of possession of cocaine by a jury in the Marion County Circuit Court and sentenced to sixteen years in the custody of the Mississippi Department of Corrections (MDOC), with nine years suspended, five years of post-release supervision, and to pay a $3,000 fine. He now appeals claiming that: the evidence of cocaine should have been excluded as it was the result of an illegal search, and the court erred in denying his motion
 
 for
 
 a judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial. Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶2. On December 5, 2006, agents from the Mississippi Bureau of Narcotics (MBN) were in Marion County, Mississippi, conducting a drug buy-bust operation. The target of the operation was an individual named “Teddy,” who was allegedly selling drugs out of a small, locally-owmed convenience store located on Highway 13 South. The MBN agents used a wired, confidential informant to make contact with Teddy and buy some marijuana using marked “buy” money. There were two sets of MBN teams: one located north of the store, and one located south of the store. However, the store was not under visual surveillance. When the informant arrived at the store to purchase the drugs, Teddy came outside and got into the informant’s vehicle. Teddy then placed a call to a man named Walter, who arrived a short time later with the marijuana. Teddy sold the drugs to the informant and gave half of the marked money to Walter, who got into his car and drove away. One of the MBN teams was alerted to stop Walter and arrest him.
 

 ¶ 3. In the meantime, the informant had returned to the other MBN team with the purchased marijuana. The remaining agents immediately went to the store to arrest Teddy. In the few minutes between the time that the informant had left
 
 *133
 
 and the agents had arrived, another ear drove up to the store and parked under the store’s awning, by the gas pumps. Teddy and another individual were standing in between the car and the front door talking. The individual with Teddy was Johnson. The agents put both men in handcuffs and had them lie on the ground, although Johnson was not considered to be under arrest at that point. The agents conducted a pat-down search of both men, but they found no weapons, drugs, or marked “buy” money. The agents then conducted a search of the nearby vehicle. When the sun visor of the car was pulled down, a plastic white grocery bag fell out. Inside the bag was a rock-like substance, later confirmed to be 0.7 gram of cocaine. A gun was also found just inside the front door of the store.
 

 ¶ 4. Johnson was indicted for possession of a controlled substance (cocaine) in violation of Mississippi Code Annotated section 41-29-139(c) (Rev.2005). As Johnson previously had been convicted and sentenced to eight years in the custody of the MDOC for possession of a controlled substance, he was charged as a second and subsequent offender under Mississippi Code Annotated section 41-29-147 (Supp.2006). On the day of the trial, February 27, 2009, Johnson filed a motion to suppress the evidence of the cocaine, claiming it was the result of an illegal search. He also filed a motion in limine to exclude all references to his previous conviction. The circuit judge denied the motion to suppress, but sustained the motion in limine.
 

 ¶ 5. Johnson was convicted and subsequently sentenced to sixteen years in the custody of the MDOC, with nine years suspended upon successful completion of the conditions of his sentence, five years of post-release supervision, and to pay a $3,000 fine.
 
 [1]
 
 Johnson filed a motion for a JNOV or, in the alternative, a new trial, which was denied by the circuit court. Johnson now appeals the denial of his motion to suppress and his motion for a JNOV or, alternatively, a new trial. Finding no error, we affirm the judgment of the circuit court.
 

 I. Whether the circuit court erred in denying Johnson’s motion to suppress.
 

 ¶ 6. Johnson contends that the circuit court erred in denying his motion to suppress the evidence as the search of the vehicle was illegal, and the evidence obtained from the search should have been excluded. In reviewing a circuit court’s denial of a motion to suppress, we look to see “whether substantial and credible evidence existed to support the ruling.”
 
 Baker v. State,
 
 991 So.2d 185, 187 (¶ 6) (Miss.Ct.App.2008) (citing
 
 Qualls v. State,
 
 947 So.2d 365, 372 (¶ 18) (Miss.Ct.App.2007)). “[A]bsent a finding that the ‘[circuit court] applied an incorrect legal standard, com mitted manifest error, or made a decision contrary to the overwhelming weight of the evidence^]’ ” we will not disturb the court’s findings on appeal.
 
 Simmons v. State,
 
 805 So.2d 452, 482 (¶ 64) (Miss.2001) (citing
 
 Taylor v. State,
 
 733 So.2d 251, 255 (Miss.1999)). The standard of review of a circuit court’s admission or exclusion of evidence is abuse of discretion.
 
 Id.
 
 (citation omitted).
 

 ¶ 7. Individuals are protected from unreasonable searches and seizures by the Fourth Amendment to the United States Constitution.
 
 Tate v. State,
 
 946 So.2d 376, 382 (¶ 17) (Miss.Ct.App.2006) (citing
 
 Unit
 
 
 *134
 

 ed States v.
 
 Grant, 349 F.3d 192, 196 (5th Cir.2003)). However, warrantless searches may be conducted in certain instances, such as “a consensual search, a search incident to arrest, an inventory search, a search under exigent circumstances if probable cause exists, and a search of a vehicle when making a lawful contemporaneous arrest.”
 
 Bradley v. State,
 
 934 So.2d 1018, 1022 (¶ 7) (Miss.Ct.App.2005) (citing
 
 Graves v. State,
 
 708 So.2d 858, 862-63 (¶ 2) (Miss.1997)).
 

 ¶ 8. Johnson correctly asserts that, at the time the vehicle was searched, he was not under arrest. Agent John Harless affirmed this when questioned by defense counsel, as follows:
 

 Q. All right. Now at the time that my client, Arvin Johnson, was placed on the ground and cuffed, was he under arrest?
 

 A. No, sir. Not at that time.
 

 Q. All right. And he was not under arrest because there was — he was not the focus of this buy-bust; is that correct?
 

 A. That’s correct.
 

 Q. Had no information that he had done anything improper or violated the law whatsoever?
 

 A. No, sir.
 

 “[T]he Fourth Amendment of the United States Constitution ‘applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.’ ”
 
 McLendon v. State,
 
 945 So.2d 372, 379 (¶ 15) (Miss.2006) (citing
 
 Brown v. Texas,
 
 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). Further, “an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest.”
 
 Baker,
 
 991 So.2d at 187 (¶ 8) (quoting
 
 Linson v. State,
 
 799 So.2d 890, 893 (¶ 8) (Miss.Ct.App.2001)). In the case before us, Johnson arrived at the store immediately after the drug sale to the MBN informant, and Agent Harless testified that Johnson was detained mainly to make sure that evidence was not being taken from the scene.
 

 ¶ 9. We find that the search was reasonable to ensure the safety of law enforcement in the context of Teddy’s arrest. “It is a fundamental concept of police work that officers, in the course of conducting an investigation that involves close contact with persons suspected of criminal activity, are entitled to take reasonable precautions to ensure their safety.”
 
 Dees v. State,
 
 758 So.2d 492, 495 (¶ 9) (Miss.Ct.App.2000). The purpose of a pat-down search is to ensure the safety of law enforcement.
 
 Anderson v. State,
 
 16 So.3d 756, 760 (¶ 10) (Miss.Ct.App.2009) (citing
 
 Terry v. Ohio,
 
 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Agent Harless testified that the MBN agents conducted a pat-down search of Teddy and Johnson for weapons and then performed a “wing-span search, which would be areas around them that[,] had a struggle ensued!,] they could easily ... obtain a weapon!.]” This included “the areas around the store, around the front of the store on the ground and the front ... compartment of the car where Mr. Johnson would have access to.”
 

 ¶ 10. Johnson argues that, as he was already handcuffed and on the ground, it was unnecessary to search the car for weapons. “If the protective search goes beyond what is necessary to determine if the suspect is armed, it is not longer valid under Terry[,] and its fruits will be suppressed.”
 
 Id.
 
 (quoting
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). To support his argument, Johnson cites to
 
 Ferrell v. State,
 
 649 So.2d 831 (Miss.1995). In
 
 Ferrell,
 
 the Mississippi Supreme Court found
 
 *135
 
 that the search of Ray Anthony Ferrell’s car was not a search incident to arrest as Ferrell had already been “frisked, handcuffed, and placed in the back-seat” of the patrol car.
 
 Id.
 
 at 833. Therefore, the officer “could have had no reasonable fear that Ferrell might have a weapon.”
 
 Id.
 
 Similarly, in a recent case,
 
 Arizona v. Gant,
 
 — U.S. -, 129 S.Ct. 1710, 1723-24, 173 L.Ed.2d 485 (2009), the United States Supreme Court held that:
 

 Police may search a vehicle incident to a recent occupant’s arrest only if the ar-restee is
 
 within reaching distance of the passenger compartment at the time
 
 of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arres-tee’s vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.
 

 (Emphasis added). As in
 
 Ferrell,
 
 the suspect in
 
 Gant
 
 had been handcuffed and put into the police car before the search took place. Therefore, both cases are distinguishable from the present one.
 

 ¶ 11. Here, the MBN agents, upon arriving at the store to arrest Teddy, encountered an unknown party, Johnson, who was talking to Teddy and standing next to a car.
 
 See United States v. Albert,
 
 579 F.3d 1188, 1195 (10th Cir.2009) (“An individual’s known connection with drug transactions is a factor supporting reasonable suspicion to frisk that individual for weapons.”) (citing
 
 United States v. Garcia,
 
 459 F.3d 1059, 1065 (10th Cir.2006)). Agent Harless testified that this situation, coupled with the loss of manpower, presented the MBN agents with an immediate safety concern. He stated:
 

 A. [Tjypically in these type situations we operate with numbers, with numerical superiority for our safety. Ideally we had it planned where there were six of us to take down one person to insure our safety. Well, as a result of [Walter] leaving and us sending the other vehicle down here, we pulled in -with only three officers. And instead of the one person we were expecting, there were two people. So we’ve gone from expecting there would be six officers to arrest one person to three officers to deal with two individuals.
 

 [[Image here]]
 

 A situation where if a fight were to start or one started resisting, it would be entirely possible for someone to get to any type weapon.
 

 [[Image here]]
 

 Q. Was safety, officer safety, yours and the other officers, a concern at this time?
 

 A. Yes, sir. Always is, especially in a situation where you’ve lost the numerical advantage.
 

 Plus, as the circuit judge noted, Johnson was “in very close proximity to the driver’s door of the car.” Agent Harless testified:
 

 Q. And [Johnson] is standing next to his car and he’s at the door of the driver’s door?
 

 A. Yes, sir. It would be like if you exited your vehicle, you know, as you exited your vehicle and he stepped out to have a conversation. If you got out of your vehicle and he came out and you were carrying on a conversation.
 

 Q. So all [Johnson] had to do was reach behind him real quick and open that door?
 

 A. Yes, sir.
 

 ¶ 12. Further, in rejecting Johnson’s motion to suppress, the circuit court also observed that there are many instances where a handcuffed suspect may still “obtain weaponry or other items to the detri
 
 *136
 
 ment and danger” of law enforcement. The United States Court of Appeals for the Fifth Circuit also has noted this danger, stating:
 

 Handcuffs are a temporary restraining device; they limit but do not eliminate a person’s ability to perform various acts. They obviously do not impair a person’s ability to use his legs and feet, whether to walk, run, or kick. Handcuffs do limit a person’s ability to use his hands and arms, but the degree of the effectiveness of handcuffs in this role depends on a variety of factors, including the handcuffed person’s size, strength, bone and joint structure, flexibility, and tolerance of pain. Albeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person
 
 or within lunge reach,
 
 and in so doing to cause injury to his intended victim, to a bystander, or even to himself. Finally, like any mechanical device, handcuffs can and do fail on occasion.
 

 United States v. Sanders,
 
 994 F.2d 200, 209 (5th Cir.1993) (emphasis added) (footnote omitted). The circuit judge, sitting as the fact-finder, was in the best position to evaluate the evidence, such as Johnson’s height and build and his proximity to the vehicle, based on the totality of the circumstances. Thus, we agree with the circuit court’s finding that it was reasonable for law enforcement to search the front area of the car in order to ensure officer safety. We find that the circuit court did not abuse its discretion in denying Johnson’s motion to suppress as credible evidence existed to support the ruling. This issue is without merit.
 

 II. Whether the circuit court erred in denying Johnson’s motion for a JNOY or, alternatively, a new trial.
 

 ¶ 13. For the purposes of efficiency and clarity, we will combine Johnson’s remaining issues. At trial, Johnson was convicted of possession of a controlled substance in violation of Mississippi Code Annotated section 41-29-139(c). Specifically, the jury found that Johnson, although not in actual possession of the cocaine, had constructive possession. Johnson argues that the State failed to prove all the elements of constructive possession; therefore, the evidence was insufficient to support his conviction. Johnson claims that there is neither any evidence that he drove the car to the store, nor that he was the owner of the vehicle where the drugs were found; consequently, he claims that he did not have constructive possession of the cocaine.
 

 ¶ 14. “A motion for a JNOV challenges the sufficiency of the evidence.”
 
 Thomas v. State,
 
 14 So.3d 812, 822 (¶ 36) (Miss.Ct.App.2009) (citing
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005)). A court’s denial of a motion for a JNOV will be upheld if, “viewing the evidence in the light most favorable to the State,” a rational trier of fact could find that “the essential elements of the crime existed[.]”
 
 Id.
 
 “If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.”
 
 Id.
 

 ¶ 15. “To support a conviction for possession of a controlled substance, ‘there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.’ ”
 
 McClellan v. State,
 
 34 So.3d 548, 553 (¶ 15) (Miss.2010) (citing
 
 Wall v. State,
 
 718 So.2d 1107, 1111 (¶ 13) (Miss.1998)). In
 
 Barnett v. State,
 
 987 So.2d 1070, 1073(¶ 7)
 
 *137
 
 (Miss.Ct.App.2008), this Court defined constructive possession as follows:
 

 Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent. Constructive possession is established by evidence showing that the contraband was under the dominion and control of the defendant.
 
 Roberson v. State,
 
 595 So.2d 1310, 1319 (Miss.1992). “There must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular contraband and was intentionally and consciously in possession of it.
 
 Curry v. State,
 
 249 So.2d 414, 416 (Miss.1971).
 

 Barnett,
 
 987 So.2d at 1073 (¶ 7). “Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.”
 
 Gales v. State,
 
 29 So.3d 65, 76 (¶ 35) (Miss.Ct.App.2009) (quoting
 
 Curry,
 
 249 So.2d at 416). In an instance like this case, where “the defendant is the driver but not the owner of the car that contains the drugs, the State must show additional incriminating facts to link the defendant to the contraband.”
 
 Harris v. State,
 
 977 So.2d 1248, 1250 (¶ 7) (Miss.Ct.App.2008) (citing
 
 Ferrell,
 
 649 So.2d at 835).
 

 ¶ 16. Here, we find that the State provided sufficient incriminating facts to support constructive possession. Johnson is correct that no one saw him in the car. However, we find it reasonable for the jury to infer that Johnson arrived in the car. It is the province of the jury “to resolve matters regarding the weight and credibility of the evidence.”
 
 Stevenson v. State,
 
 733 So.2d 177, 186 (¶ 37) (Miss.1998) (quoting
 
 Hiter v. State,
 
 660 So.2d 961, 964 (Miss.1995)). When the confidential informant left the convenience store, the vehicle in question was not present, nor was Johnson. When the police arrived minutes later, the vehicle was parked in front of the store, and Johnson was standing next to it, talking to Teddy. Further, there was no evidence presented that any other persons were there when the agents arrived, although a few store patrons did come and go while the detention and search were being conducted.
 

 ¶ 17. As to the ownership of the vehicle, it was determined that Johnson was not the owner; in fact, no definitive evidence was presented regarding who owned the car. However, when questioned about the ownership of the car, Agent Harless testified that: “I believe going from memory, and I could be incorrect, I believe the owner was Mr. Johnson’s mother.” He also stated that “later that evening as we were preparing to depart, I’m unsure if it was [Johnson’s] father or one of his family members arrived I believe to take custody of the vehicle.” Defense counsel raised no objection to this testimony. Therefore, it is reasonable to presume that Johnson was related to and/or knew the owner of the car. Moreover, Johnson was alone with Teddy, a known drug dealer. Johnson was standing next to the driver’s side of the car, within reaching distance of the sun visor where the cocaine was found. Viewing the evidence in the light most favorable to the State, we find that the State presented sufficient evidence for a reasonable and fair-minded jury to find Johnson guilty of constructive possession of a controlled substance.
 

 ¶ 18. Johnson also contends that it was error for the circuit court to deny his motion for a new trial. “[A] motion for a new trial challenges the weight of the evidence.”
 
 Fulgham v. State,
 
 12 So.3d 558, 562 (¶ 20) (Miss.Ct.App.2009) (citing
 
 Hearn v. State,
 
 3 So.3d 722, 741 (¶ 56) (Miss.2008)). Sitting as a “thirteenth juror,” this Court must “determine whether a verdict is against the over
 
 *138
 
 whelming weight of the evidence^] ... examining] the evidence in the light most favorable to the verdict.”
 
 Patterson v. State,
 
 37 So.3d 702, 704 (¶ 10) (Miss.Ct.App.2010) (citing
 
 Bush,
 
 895 So.2d at 844 (¶ 18)). We will only reverse a circuit court’s denial of a motion for new trial when the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Fulgham,
 
 12 So.3d at 562 (¶ 20) (citing
 
 Hearn,
 
 3 So.3d at 741 (¶ 57)).
 

 ¶ 19. After reviewing the evidence, we find that it supports the verdict. Teddy had Walter bring contraband to the store for the sale, and Johnson was present at the store, talking to Teddy, only a few minutes after the MBN informant bought drugs from Teddy. The cocaine was found in the driver’s sun visor, within Johnson’s reach. The evidence was that the car likely belonged to a relative of Johnson’s; there was no one else present who owned the vehicle, and the car was not there when the informant bought the marijuana from Teddy.
 

 ¶ 20. Therefore, we find that the evidence supports the circuit court’s denial of Johnson’s motion for a JNOV or, alternatively, a motion for a new trial and affirm.
 

 ¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH NINE YEARS SUSPENDED, FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $3,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The conditions of Johnson’s sentence was that he obtain a GED certificate and be subjected to evaluation and treatment for drug/alcohol dependency, including completion of the MDOC’s Intensive Drug and Alcohol Program.